# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA L. O'CON, | Case No. 1:13-cv-1321-AWI-SKO |
| Plaintiff, | |
| v. | **ORDER FOR PLAINTIFF TO ELECT TO PROCEED ONLY ON COGNIZABLE CLAIMS OR AMEND THE COMPLAINT WITHIN 30 DAYS** |
| JOHN KATAVICH, et al., | (**Doc**. **No. 1**) |
| Defendants. | |

## I. INTRODUCTION

On August 5, 2013, Plaintiff Tina L. O'Con ("Plaintiff") filed a complaint in the U.S. District Court for the Central District of California asserting several claims pursuant to 42 U.S.C. § 1983. (Doc. 1.) On August 9, 2013, the case was transferred to the U.S. District Court for the Eastern District of California because all the events or omissions giving rise to Plaintiff's claims occurred in Wasco, California. (Doc. 3.) For the reasons set forth below, the Court finds that Plaintiff has stated some cognizable claims, but other claims are not cognizable. As such, Plaintiff is ordered to elect whether she will proceed only on the claims found cognizable or, alternatively, amend the complaint.

## II. BACKGROUND

Plaintiff alleges that on August 11, 2012, she was visiting her husband, inmate Kevin Flemings ("Flemings"), at Wasco State Prison in the A facility visiting room. (Doc. 1, ¶ 1, & p. 6.) During the visit, Defendant Correctional Officer Aagon Lucas ("Lucas") asserted that Flemings was secreting an unknown object in the back of Flemings' pants, and Lucas then escorted Flemings to the back office. (Doc. 1, ¶¶ 2-3.) At the same time, Defendant Correctional Officer Paul Pierce ("Pierce") approached Plaintiff and instructed her to get up from the table where she had been seated with Flemings, and come with Pierce to the lobby outside the visiting room. (Doc. 1, ¶ 4.) Plaintiff complied with Pierce and waited in the outside lobby area of the visiting room. (Doc. 1, ¶ 5.) Pierce walked toward the women's restroom, and then immediately came back to the lobby where Plaintiff was seated and instructed Plaintiff to come with him to the room next door to the lobby where Pierce placed Plaintiff in hand restraints. (Doc. 1, ¶ 6.) Pierce then grabbed Plaintiff's purse and jacket from her hands and searched both. (Doc. 1, ¶ 7.) Pierce did not find any contraband during his search. (Doc. 1, ¶ 8.) Pierce began to question Plaintiff regarding what unknown object she had given to Flemings. (Doc. 1, ¶ 8.) Pierce did not advise Plaintiff of her Miranda rights. (Doc. 1, ¶ 8.)

Plaintiff informed Pierce she had not given anything to Flemings, and Pierce proceeded to grab Plaintiff by her inner upper arm with his hand rubbing several times against Plaintiff's breast in the process. (Doc. 1, ¶ 9.) Pierce escorted Plaintiff to the outside visiting office. (Doc. 1, ¶ 9.) Once in the front visiting office, Pierce interrogated Plaintiff for approximately 10 minutes without providing a *Miranda*[1] warning. (Doc. 1, ¶ 10.) Plaintiff asked Pierce if she could be taken out of the hand restraints because they were too tight and cutting into her wrists, but Pierce refused to do so until Plaintiff "started talking." (Doc. 1, ¶ 11.) Plaintiff remained in the hand restraints until they were removed at the county jail. (Doc. 1, ¶ 11.)

Pierce then left Plaintiff for approximately 10 minutes, then returned and informed Plaintiff that Flemings had a cellular phone in his possession. (Doc. 1, ¶ 12.) At that time, Defendant Correctional Officer King-Eddington ("King-Eddington") and Lucas joined Plaintiff

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

2

and Pierce in the room, and the three started questioning Plaintiff about her involvement in giving Flemings the cell phone and how she got the phone onto the prison grounds. (Doc. 1, ¶ 13.) After she denied any illegal activity, Pierce informed Plaintiff that she was going to be strip searched. (Doc. 1, ¶ 14.) Plaintiff responded that she refused to be strip searched, and Pierce responded that Plaintiff did not have any choice. (Doc. 1, ¶ 15.) Plaintiff was then escorted to the women's restroom by King-Eddington and Defendant Correctional Officer Nickell ("Nickell"), where Plaintiff was required to remove her clothes and she was searched. (Doc. 1, ¶ 16.) Plaintiff was forced to bend over, squat, and cough as Defendants used flashlights aimed at Plaintiff's genitals. King-Eddington knew that Plaintiff was legally disabled and walked with the aid of a cane. (Doc. 1, ¶ 16.)

No contraband was found during the course of the strip search, and the Plaintiff was placed back in hand restraints and escorted to the visiting office by King-Eddington and Nickell. Pierce remained with Plaintiff. (Doc. 1, ¶ 17.) Pierce then grabbed Plaintiff by her inner upper arm, and his hand brushed up against Plaintiff's breast. Pierce escorted Plaintiff to a waiting patrol car outside and placed Plaintiff in the back seat. (Doc. 1, ¶ 18.) Pierce and Lucas sat in the front seat of the patrol car, and they proceeded to drive to Plaintiff's parked car. (Doc. 1, ¶ 20.) Pierce used Plaintiff's keys to open her car and search for contraband. (Doc. 1, ¶ 22.) Pierce then picked up Plaintiff's cell phone, turned it on, and looked through the contents on the phone, including text messages. (Doc. 1, ¶ 22.) Lucas asked Plaintiff if she wished to use the restroom before they left for the county facility, and Plaintiff stated she did. (Doc. 1, ¶ 23.) Lucas escorted Plaintiff to the women's restroom and then escorted Plaintiff back to the patrol car where she was placed in the backseat. (Doc. 1, ¶ 23.)

Once placed back in the patrol car, Pierce turned around to face Plaintiff and advised her of her Miranda rights as she was driven to the women's county facility where she was booked for a felony violation. (Doc. 1, ¶ 24.)

Subsequently, Plaintiff received in the mail a "Notice of Suspension" written and signed by King-Eddington indicating that Plaintiff's visiting privileges with Flemings were suspended for one year. (Doc. 1, ¶ 25.) The basis for the Notice of Suspension was Plaintiff's spontaneous

utterance during her visit that she brought the cell phone to Flemings for monetary gain because she was disabled and needed money. (Doc. 1, ¶ 26.)

In September 2012, Plaintiff spoke to a public relations officer for Wasco State Prison regarding her suspension of visitation rights. Officer Masuka informed Plaintiff that he had seen a waiver form indicating that Plaintiff had consented to the August 11, 2012, strip search. (Doc. 1, ¶ 27.) Plaintiff responded that she had not signed a waiver form, and Officer Masuka replied that Plaintiff should have been given a copy of the form after she signed it. (Doc. 1, ¶ 27.) Approximately two weeks after this conversation, Plaintiff received a fax copy of the search waiver form, and it contained Plaintiff's signature that had been forged by Defendants. (Doc. 1, ¶ 27.)

### III. DISCUSSION

**A. Screening Standard**

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

In determining whether a complaint fails to state a claim, the Court applies the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[A] complaint [that] pleads facts that is 'merely consistent with' a defendant's

4

liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.     Section 1983 Legal Standards**

The Civil Rights Act, codified at 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted).

> [Section 1983] creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution.  Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials.  To prove a case under section 1983, the plaintiff must first demonstrate that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. [citations omitted].

*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  A person acts under color of state law when the individual "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49-50 (1988) (internal quotation marks and citations omitted).  "[G]enerally, a public employee acts under color of state law while engaged in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.  The causation requirement in the second prong focuses on the duties and responsibilities of each defendant whose acts or omissions are alleged to have caused a constitutional violation.  "A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**C.     Plaintiff States Cognizable Section 1983 Claims for Unlawful Arrest and Search**

The Fourth Amendment to the United States Constitution guarantees freedom from unreasonable search and seizure. U.S. Const. amend. IV. The touchstone for all issues under the Fourth Amendment is reasonableness. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Reasonableness is determined by examining the totality of the circumstances. *Id.*

**1.     Unlawful Arrest**

Under the heading of "Ground 1," Plaintiff asserts that Defendant Pierce did not have a warrant or any probable cause to arrest her and therefore violated her Fourth Amendment rights. Specifically, Plaintiff alleges that while she was visiting her husband in prison, she was taken to an outer waiting area where she was arrested. Plaintiff states that, although she was arrested and searched, "none of the correctional officials witnessed any crime that the Plaintiff allegedly passed a cell phone to [inmate] Flemings." (Doc. 11, p. 6.)

A claim of illegal arrest is cognizable under Section 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the allegation is that the arrest was without probable cause or other justification. *Pierson v. Ray*, 386 U.S. 547, 555-58 (1967); *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993). Probable cause exists when, at the time of arrest, the officers know reasonable trustworthy information such that a reasonable person would believe that an individual has committed or was committing an offense. *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995). Construing Plaintiff's complaint liberally and affording Plaintiff the benefit of any doubt (*see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)), she asserts that she was arrested by Defendant Pierce without a warrant and without any applicable legal exception to the Fourth Amendment's warrant requirement. As such, Plaintiff has adequately alleged a cognizable Section 1983 claim for unlawful arrest in violation of the Fourth Amendment against Defendant Pierce.[2]

---

[2] While Plaintiff alleges that her "due process" rights were violated, a claim for illegal arrest arises only under the Fourth Amendment rather than under the substantive due process clause of the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274-75 (1994).

6

### 2. **Unlawful Search of Plaintiff's Person, Jacket, and Purse by Defendant Pierce**

Plaintiff alleges that, while she was visiting with inmate Flemings, she was escorted to a waiting area outside the visiting room, placed in hand restraints, and her purse and jacket were forcibly removed and searched by Defendant Pierce. (Doc. 1, p. 7.) Defendant Pierce then searched her person by "pull[ing] the Plaintiff's t-shirt from her body searching for contraband." (Doc. 1, p. 7.) This search was performed even though no correctional officer had witnessed a crime or knew whether inmate Flemings had any contraband on his person. (Doc. 1, p. 6-7.) Plaintiff contends that the search of her purse, jacket, and her person was unreasonable under the Fourth Amendment because there was no warrant, she had not consented to the search, and there was no basis for the search.

Prison visitors do not abandon their constitutional rights when they enter a penitentiary. However, the Fourth Amendment does not afford a prospective visitor to a penal institution the same rights that a person would have on public streets or in a home. *Spear v. Sowders*, 71 F.3d 626, 629-30 (6th Cir. 1995). Because of institutional security concerns, visitors have a lesser expectation of privacy when seeking to visit a prison. As a result, prison authorities have much greater leeway in conducting searches of visitors. Merely as a condition of visitation, absent *any* suspicion, visitors can be subjected to some searches such as a patdown or a metal detector sweep. *Id.* "Prison officials may well have a need to search visitors in some manner in order to prevent smuggling of contraband (such as drugs or weapons) to inmates." *Wood v. Clemons*, 89 F.3d 922, 927 (1st Cir. 1996). However, some degree of individualized suspicion is required to search visitors or their belongings by force or without their consent and without allowing a visitor the option to leave the prison rather than be subjected to a search.[3] *See Gadson v. State*, 341 Md. 1, 13 (1995).

Plaintiff does not allege that the search of her person, her jacket, and her purse by Defendant Pierce constituted an administrative search *conducted prior to and as a condition of*

---

[3] Although prison visitor vehicle searches without any individualized suspicion has been deemed reasonable under the special needs doctrine. *Neumeyer v. Beard*, 421 F.3d 210, 214 (3d Cir. 2005) ("considering the relatively minor inconvenience of the searches, balanced against the SCIH/DOC officials' special need to maintain security and safety of the prison that rises beyond their general need to enforce the law, the prison officials' practice of engaging in suspicionless searches of prison visitors' vehicles is valid under the special needs doctrine").

7

Plaintiff's visitation. Rather, Plaintiff alleges that her visit with her husband was interrupted and Defendant Peirce searched Plaintiff's purse, jacket, and Plaintiff's person without a warrant or any legal exception to the Fourth Amendment's warrant requirement, *e.g.*, no individualized suspicion that she was concealing or transporting contraband. Plaintiff alleges that she was searched when no correctional officer had witnessed a crime, before officers knew whether inmate Flemings had any contraband on his person, and in the absence of her consent. Construing the allegations of the complaint liberally and reading the complaint as a whole, Plaintiff has adequately set forth a claim for unreasonable search in violation of the Fourth Amendment. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt.").

### 3. Unreasonable Strip Search

Plaintiff asserts that she was subjected to a strip search without a warrant and without probable cause. Plaintiff also alleges Defendants did not inform her that she could refuse to consent to the strip search and she never consented to a search, but the officers forged her signature on a consent form.

Although not yet addressed by the Ninth Circuit in a published opinion, many other Courts of Appeals have concluded that, after weighing the state's legitimate interest in prison security against the privacy rights of prison visitors, a visitor may only be subjected to a strip search if the search is supported by reasonable suspicion. *Blackburn v. Snow*, 771 F.2d 556, 563 (1st Cir. 1985); *Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997); *United States v. Johnson*, 27 F.3d 564 (4th Cir. 1994); *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) (en banc); *Burgess v. Lowery*, 201 F.3d 942 (7th Cir. 2000); *Thorne v. Jones*, 765 F.2d 1270, 1276-77 (5th Cir. 1985); *Boren v. Deland*, 958 F.2d 987 (10th Cir. 1992); *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982); *see also Kirkpatrick v. City of L.A.*, 803 F.2d 485, 488-89 (9th Cir. 1986) (in applying reasonable suspicion test, court cited strip search cases concerning prisoners, prison guards, and visitors reasoning those cases provide a "meaningful parallel" for analysis of reasonableness of strip search of officers accused of stealing from arrestee).

While subjecting a prison visitor to a strip search in the absence of a warrant does not require probable cause, the weight of authority indicates that officers must have reasonable suspicion. Plaintiff asserts the officers lacked reasonable suspicion to search her – *i.e.*, none of the Defendant officers witnessed Plaintiff pass a cell phone to inmate Flemings. Interpreting Plaintiff's complaint as a whole, she adequately alleges the strip search of her person was unreasonable under the circumstances and in violation of the Fourth Amendment.

**D.      The Remainder of Plaintiff's Claims are Not Cognizable**

**1.      Failure to Provide Miranda Warnings**

Plaintiff captions her "Ground 3" claim as follows: "Plaintiff's right to remain silent and to be given a warning under the Fifth Amendment and Due Process Clause was violated under federal and state color of law." (Doc. 1, p. 7.) Plaintiff alleges that after she was arrested and placed in hand restraints, Defendant Pierce questioned Plaintiff about what she brought onto the prison grounds without informing Plaintiff of her Miranda rights. Plaintiff also asserts that Defendants King-Eddington and Lucas joined Pierce during the questioning. Plaintiff concludes that all three Defendants "had a duty under both federal and state law to ensure that Plaintiff's rights to Due Process were followed" by providing her with the Miranda warnings. (Doc. 1, p. 7-8.)

**a.      Fifth Amendment Claims**

**(i)      The Due Process Clause of the Fifth Amendment**

To the extent that Plaintiff is attempting to set forth a Due Process claim pursuant to the Fifth Amendment, it applies only to actions of the federal government, not to those of the state or local governments. *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981); *see also Lee v. City of L.A.*, 250 F.3d 668, 687 (9th Cir. 2001). Here, correctional officers at a state prison are state actors and none of their conduct is an action of the federal government. As such, the Fifth Amendment's Due Process Clause does not apply.

**(ii)      The Self-Incrimination Clause of the Fifth Amendment**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, the

9

Supreme Court adopted prophylactic procedural measures to guarantee that a suspect is advised of his Fifth Amendment rights before custodial interrogations. 384 U.S. 436, 444-45 (1966). These protections are constitutional in nature. *See Dickerson v. United States*, 530 U.S. 428 (2000).

However, the failure to give a Miranda warning is not, itself, a ground for a Section 1983 claim. *Chavez v. Martinez*, 538 U.S. 760, 773 (2003); *see also Stoot v. City of Everett*, 582 F.3d 910, 922-23 (9th Cir. 2009). Coercive police questioning, such as that performed without advising a person of his or her Miranda rights, does not violate the Fifth Amendment absent "use" of the statements in a "criminal case." In *Stoot*, the Ninth Circuit held that "[a] coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." 582 F.3d at 925.

Although Plaintiff states that Pierce, King-Eddington and Lucas's questioning of Plaintiff without advising her of her Miranda rights constitutes a Fifth Amendment violation, no facts show that statements made by Plaintiff during the course of the interrogation were relied upon to file formal charges against Plaintiff. Plaintiff alleges that a police report was filed by Defendants Pierce and Lucas, but Plaintiff does not allege that charges were ever filed based upon this police report, or that any statements Plaintiff made during the questioning were used against her during a criminal proceeding. Because there are no facts showing that a statement by Plaintiff was used in a criminal proceeding as articulated by the Ninth Circuit in *Stoot*, there is no cognizable Section 1983 claim for violation of the Self-Incrimination Clause of the Fifth Amendment.

### b. Substantive Due Process – Fourteenth Amendment

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law . . . ." Const. amend. XIV. Plaintiff's claim refers only to a violation of her due process rights generally; she does not specify any amendment other than the Fifth Amendment as a basis for her claim. Nevertheless, because the Defendants are state actors, the Fifth Amendment's Due Process Clause does not apply, as explained above. The Fourteenth Amendment's Due Process Clause, however, does apply to state actors.

In *Chavez v. Martinez*, the United States Supreme Court considered a Fourteenth Amendment due process claim involving a failure to give *Miranda* warnings. 538 U.S. at 763. In *Chavez*, officers Pea and Salinas were investigating suspected narcotics activity in a vacant lot. *Id*. at 763. While questioning an individual at the scene, the officers heard a bicycle approach; they asked the rider, Martinez, to dismount, spread his legs, and place his hands behind his legs, and Martinez complied. *Id*. at 764. During the patdown frisk, an altercation ensued; the officers claimed that Martinez grabbed Salinas' gun and pointed it at the officers, but Martinez denied this. *Id.* Both parties agreed that Salinas yelled, "He's got my gun," at which time Pea drew her gun and shot Martinez several times, causing severe injuries. *Id.* The officers placed Martinez under arrest, and he was taken to the hospital. *Id.*

Chavez, a patrol supervisor, arrived at the scene and accompanied Martinez to the hospital and questioned Martinez there while he was receiving treatment. *Id.* At some point during the questioning, Martinez admitted that he took the gun from the officer's holster and pointed it at the police; he also admitted that he used heroin regularly. *Id.* At no point during the interview, however, was Martinez given the *Miranda* warnings. *Id.* Martinez was never charged with a crime, and his answers were never used against him in any criminal prosecution. *Id.* Nevertheless, Martinez brought suit under Section 1983 alleging that Chavez' questioning violated Martinez' Fifth Amendment right as well as his Fourteenth Amendment substantive due process right to be free from coercive questioning. *Id.* at 765.

In considering Martinez' Fourteenth Amendment substantive due process claim, the Court noted its prior holding in *Rochin v. California*, 342 U.S. 165, 172 (1952), that convictions based on evidence obtained by methods that are "so brutal and so offensive to human dignity" that they "shoc[k] the conscience" violate the Due Process Clause of the Fourteenth Amendment. The Court recognized that official conduct "most likely to rise to the conscience-shocking level" is "conduct intended to injure in some way unjustifiable by any government interest." *Chavez*, 538 U.S. at 774 (citing *Cnty. of Sac. v. Lewis*, 523 U.S. 833 (1998)). Turning to the facts of the case, the Court determined there was no evidence that Chavez acted with a purpose to harm Martinez by intentionally interfering with his medical treatment, and Chavez ceased his

11

questioning to allow tests and other procedures to be performed. Further, the need to investigate whether there had been any police misconduct constituted a justifiable government interest given the risk that key evidence would have been lost had Martinez died without the authorities hearing his side of the story. *Id.* at 775. Under these circumstances, the Court concluded that Chavez' questioning of Martinez without providing a *Miranda* warning did not allege a violation of the Fourteenth Amendment.

Here, the coercion alleged by Plaintiff includes questioning without proper Miranda warnings. Like *Chavez,* the facts alleged do not indicate the type of coercion that shocks the conscience necessary to set forth a cognizable claim under the Fourteenth Amendment.

### 2.     Forged Consent Form and Conspiracy to Forge A Consent Form

Plaintiff asserts that, after she refused to consent to the strip search, Defendants Peirce, King-Eddington and Nickell conspired to forge Plaintiff's name on the wavier form, and then proceeded with the strip-search of Plaintiff.

If officials were authorized to strip search Plaintiff *without* her consent, then any alleged forged consent to search or conspiracy to do so, from a constitutional perspective, is irrelevant. If the officers were not authorized to search without Plaintiff's consent, then a forged consent renders the search unconstitutional. Thus, a forged consent form does not implicate Plaintiff's constitutional rights in and of itself, but the alleged forged consent to search and the conspiracy to forge Plaintiff's consent is relevant to the constitutionality of the strip search. *See generally Meza v. Schaaf*, 2012 WL 2627527, at * 1 (D.N.H. Apr. 16, 2012).

Additionally, as to Plaintiff's conspiracy claim, conspiracy itself is not a constitutional tort under Section 1983. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). A conspiracy may, however, enlarge the pool of responsible defendants by demonstrating their causal connections to the violation. *Id.* To plead a claim for conspiracy to violate an individual's civil rights, a plaintiff must plead sufficient facts to infer "the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted). Here, Plaintiff has not alleged how the forgery itself is a constitutional violation, nor has she established sufficient facts to infer the

existence of an agreement among Defendants to violate her rights.

Finally, to the extent Plaintiff is attempting to state a claim based on Defendants' alleged criminal action in forging her consent, such a claim is not cognizable in a Section 1983 action as there is no federal constitutional right to have a third party prosecuted criminally. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks judicially cognizable interest in the prosecution or nonprosecution of another"). In sum, Plaintiff states no cognizable Section 1983 claim arising out of an alleged forged consent form.

### 3. False Police Report

Plaintiff alleges that after she was arrested, questioned, and strip-searched, to justify her arrest and illegal search, Defendant Pierce and Lucas both filed a false police report. (Doc. 1, p. 10-11.) Defendants Pierce and Lucas wrote that Flemings had admitted to them that Plaintiff brought the cell phone to him and that they had entered into an agreement to sell the phone for monetary gain. (Doc. 1, p. 11.) According to Plaintiff, this was not accurate and the report violated her due process rights. (Doc. 1, p. 10-11.)

There is no constitutional right to a correct police report. *Landrigan v. City of Warwick*, 628 F.2d 736, 744 (1st Cir. 1980); *see also Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969). An officer's falsification of a report only constitutes a due process violation when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property. *See Johnston v. Cnty. of Sonoma*, No. C. 10-03592, 2011 WL 855934, at * 3 (N.D. Cal. Mar. 9, 2011) (citing *Harmon v. City of St. Louis Cnty.*, No. 4:08-cv-226-SNLJ, 2009 WL 880024, at *3 (E.D. Mo. Mar. 30, 2009) ("There is no constitutional right to an accurate police report," and an officer's falsification of a report "only constitutes a due process violation when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property.")). Plaintiff has not alleged how the allegedly false police report itself led to a deprivation of a liberty or property interest. As such, the claim is not cognizable.

### 4. False Report

Plaintiff alleges that her due process rights were violated when Defendant King-Eddington filed a false report. (Doc. 1, p. 11.) Plaintiff contends that King-Eddington wrote a false report

13

claiming that Plaintiff made a spontaneous utterance while she was being searched, admitting that she brought the cell phone onto prison grounds and gave it to inmate Flemings for monetary gain. (Doc. 1, p. 11.) Defendant King-Eddington then used this report to suspend Plaintiff's visiting rights with inmate Flemings for one year. (Doc. 1, p. 11.)

Prisoners do not have a constitutional right to receive unfettered visits under the Due Process Clause of the Fourteenth Amendment. *Kentucky v. Dep't* Corrections, 490 U.S. 454, 460, 462 (1989); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc); *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam). A fortiori, visitors have no constitutional right to visit a prison or a prisoner. Nonetheless, while the Fourteenth Amendment does not independently confer a right to visitation, state law may create a liberty interest in visitation enforceable under the Fourteenth Amendment. *Thompson*, 490 U.S. at 461.

Here, Plaintiff has not explained how the allegedly false prison report implicates any of her constitutional rights, nor does she point to any regulation that creates a liberty interest in visiting a prisoner or a particular process by which visitation privileges may be revoked. As such, this claim based on an allegedly false report regarding Plaintiff's visit to the prison is not cognizable.

**5.    Warden Katavich**

**a.    Individual Capacity**

Plaintiff also alleges that Defendant Katavich violated her due process rights and her right to equal protection by failing to protect her civil rights, failing to make proper policy, and conspired with his subordinates to cover up the violations of Plaintiff's civil rights. (Doc. 1, p. 12.)

"There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, a "defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.2d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite causal connection may be established by the supervisor's "own culpable action or inaction in the training, supervision, or control of his

14

subordinates; . . . his acquiescence in the constitutional deprivation; or . . . conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1988)).

Plaintiff's complaint lacks any specific allegations showing that Warden Katavich had any direct or causal connection to the alleged constitutional violations, or that Warden Katavich was aware of them. Instead, Plaintiff alleges that Warden Katavich "knew or should have known that the event that transpired regarding the Plaintiff . . . was a violation of her constitutional rights." (Doc. 1, p. 12.) To state a cause of action, Plaintiff must allege specific facts showing what the Warden personally did or did not do, when and where, and how those actions or inaction directly caused a violation of Plaintiff's civil rights. Any claim against the Warden in his individual capacity is dismissed, with leave to amend. If Plaintiff lacks such facts involving the Warden, he should not be named in any future amended complaint.

### b. Official Capacity

Plaintiff cannot state a claim against Warden Katavich in his official capacity. Official capacity claims against state officials are merely another way of pleading a claim against the state itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)). Thus, "[t]he Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999).

The Eleventh Amendment, however, does not bar official capacity claims against state officials for prospective injunctive relief to end a continuing violation of federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Further, a plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged violation. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

///

As it pertains to Plaintiff's request for injunctive relief preventing Defendants from prohibiting inmate Flemings from visiting Plaintiff, undertaking false searches of Fleming's person or cell, or placing Flemings in Administration Segregation because of a false investigation, Plaintiff has no standing to assert such a claim. *See generally Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff demonstrate he *personally* has suffered actual or threatened injury).

Plaintiff also seeks an injunction preventing Defendants from transferring her husband to a prison further away, which would cause a hardship. However, this request for relief has no nexus to the conduct of Defendants that purportedly violated Plaintiff's constitutional rights. The Eleventh Amendment allows only prospective injunctive relief to prevent an ongoing violation of federal law. *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 840.

Plaintiff also seeks an injunction to prevent Defendants from precluding her from visiting inmate Flemings. Plaintiff has not established how the injunctions she seeks will remedy ongoing constitutional violations. As such, Plaintiff has not adequately set forth a request for prospective injunctive relief that is actionable.

For these reasons, Plaintiff fails to state a cognizable official capacity suit against Defendant Katavich.

**E.     Conclusion**

As set forth above, the Court finds that Plaintiff has stated the following cognizable Section 1983 claims:

(1)     **"Ground 1":**  Unlawful Arrest in violation of the Fourth Amendment against Defendant Pierce;

(2)     **"Ground 2":**  Unlawful search of Plaintiff's purse, jacket, and person in violation of the Fourth Amendment against Defendant Peirce; and

(3)     **"Ground 4"** and **"Ground 5":**  Unlawful strip search in violation of the Fourth Amendment against Defendants King-Eddington and Nickell.

Plaintiff's allegations related to the alleged forgery of her signature on a consent-to-search do not themselves give rise to an independent Section 1983 claim as pled. However, those

16

allegations are relevant to the constitutionality of the strip search. Further, Plaintiff's claims that arise out of Defendants' failure to provide her with Miranda warnings are not cognizable in the absence of allegations how any statements Plaintiff made were used against her in a criminal proceeding in violation of the Fifth Amendment.

For the reasons set forth above, the following claims are **not cognizable** as pled:

(1) **"Ground 3":** Failure to provide Plaintiff with Miranda warning;

(2) **"Ground 6":** Forging Plaintiff's name on a consent-to-search form;

(3) **"Ground 7":** Conspiracy to forge Plaintiff's name on the consent form;

(4) **"Ground 8":** False police report;

(5) **"Ground 9":** False report used to suspend Plaintiff's visits;

(6) **"Ground 10":** Failure by Warden Katavich to protect Plaintiff's civil rights

As discussed below, Plaintiff may file an amended complaint to cure the deficiencies of these claims, or she may elect to proceed on **only** the claims found to be cognizable.

### F. Plaintiff May Amend the Complaint Or Elect to Proceed on those Claims Found Cognizable

As set forth above, Plaintiff's complaint states cognizable claims for unlawful arrest and unlawful search in violation of the Fourth Amendment against Defendants Pierce, King-Eddington, and Nickell. Plaintiff's allegations do not, however, state cognizable claims under Section 1983 against Defendants Katavich or Lucas. The Court will provide Plaintiff an opportunity to file an amended complaint curing the deficiencies identified in this order. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendants Pierce, King-Eddington, and Nickell on the three cognizable claims set forth above, Plaintiff may notify the Court in writing, and her other claims will be recommended for dismissal for failure to state a claim. Plaintiff will then be provided with a summons and a USM-285 form for completion. Upon completion of the forms and submission to the Court, the United States Marshal will be directed to initiate service of process on Defendants Pierce, King-Eddington, and Nickell.

If, however, Plaintiff elects to amend her complaint, Plaintiff is advised that Local Rule 220 requires an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

### IV. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that

1. **Within 30 days** from the date of this order Plaintiff shall **either**
   a. File a statement informing the Court of Plaintiff's willingness to proceed **only** on the claim found cognizable; **or**
   b. File an amended complaint; and
2. If Plaintiff fails to either state her willingness to proceed with the cognizable claim or file an amended complaint, the Court will recommend dismissal of all the claims, with the exception of the claims found cognizable.

IT IS SO ORDERED.

Dated:   **November 25, 2013**                    /s/ Sheila K. Oberto
                                               UNITED STATES MAGISTRATE JUDGE