**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TINA L. O'CON, | 1:13-cv-01321-AWI-SKO |
| Plaintiff, | **ORDER DENYING PRELIMINARY INJUNCTION** |
| v. | |
| | (Doc. 18) |
| JOHN KATAVICH, Warden, et. al., | |
| Defendants. | |

_____/

## I. Introduction

Plaintiff Tina L. O'Con ("Plaintiff") filed a complaint *in forma pauperis* in the U.S. District Court for the Central District of California[1] asserting several claims against Wasco State Prison ("WSP") officials pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff is not an inmate, her action arises from a visit to WSP.

Plaintiff now seeks an order, mandating the return of a pair of shoes and a television confiscated from her husband and enjoining Defendants and "unknown actor of the State" from intercepting her husband's legal and personal correspondence. For the following reasons, Plaintiff's application for preliminary injunction will be denied.

---

[1] The case was transferred to the U.S. District Court for the Eastern District of California because all the events or omissions giving rise to Plaintiff's claims occurred in Wasco, California. (Doc. 3.)

1

## II. Background

The allegations of the Complaint all surround a visit by Plaintiff to her husband, Kevin Flemings ("Flemings"), at WSP wherein she was searched after prison officials concluded that she had provided contraband during visitation. The Honorable Magistrate Judge Sheila K. Oberto performed the required screening of Plaintiff's complaint and determined that only Plaintiff's first, second, fourth, and fifth grounds for relief stated a claim. (Doc. 6.) Those claims alleged: 1) unlawful arrest in violation of the Fourth Amendment against Defendant Pierce, 2) unlawful search of Plaintiff's purse, jacket, and person in violation of the Fourth Amendment against Defendant Correctional Officer Paul Pierce ("Pierce"); 4) unlawful strip search of Plaintiff in violation of the Fourth Amendment against Defendant Correctional Officer King-Eddington ("King-Eddington"); and 5) unlawful strip search of Plaintiff in violation of the Fourth Amendment against Defendant Correctional Officer Nickell ("Nickell"). (Doc. 6.) Plaintiff elected to proceed on those claims rather than to file an amended complaint. (Doc. 9.) This Court ordered all other claims dismissed from this action for failure to state a claim. (Doc. 10.)

The relevant facts relating to the viable claims are as follows: Plaintiff alleges that on August 11, 2012, she was visiting Flemings at Wasco State Prison in the A facility visiting room. (Doc. 1, ¶ 1, & p. 6.) During the visit, Defendant Correctional Officer Aagon Lucas ("Lucas") asserted that Flemings was secreting an unknown object in the back of Flemings' pants, and Lucas then escorted Flemings to the back office. (Doc. 1, ¶¶ 2-3.) At the same time, Pierce approached Plaintiff and instructed her to get up from the table where she had been seated with Flemings, and come with Pierce to the lobby outside the visiting room. (Doc. 1, ¶ 4.) Plaintiff complied with Pierce and waited in the outside lobby area of the visiting room. (Doc. 1, ¶ 5.) Pierce walked toward the women's restroom, and then immediately came back to the lobby where Plaintiff was seated and instructed Plaintiff to come with him to the room next door to the lobby where Pierce placed Plaintiff in hand restraints. (Doc. 1, ¶ 6.) Pierce then grabbed Plaintiff's purse and jacket from her hands and searched both. (Doc. 1, ¶ 7.) Pierce did not find any contraband during his search. (Doc. 1, ¶ 8.) Pierce began to question Plaintiff regarding what unknown object she had given to Flemings. (Doc. 1, ¶ 8.)

Plaintiff informed Pierce she had not given anything to Flemings, and Pierce proceeded to grab Plaintiff by her inner upper arm with his hand rubbing several times against Plaintiff's breast in the process. (Doc. 1, ¶ 9.) Pierce interrogated Plaintiff for approximately ten minutes. (Doc. 1, ¶ 10.) Plaintiff asked Pierce if she could be taken out of the hand restraints because they were too tight and cutting into her wrists, but Pierce refused to do so until Plaintiff "started talking." (Doc. 1, ¶ 11.) Plaintiff remained in the hand restraints until they were removed at the county jail. (Doc. 1, ¶ 11.)

Pierce then left Plaintiff for approximately 10 minutes, then returned and informed Plaintiff that Flemings had a cellular phone in his possession. (Doc. 1, ¶ 12.) At that time, King-Eddington and Lucas joined Plaintiff and Pierce in the room, and the three started questioning Plaintiff about her involvement in giving Flemings the cell phone and how she got the phone onto the prison grounds. (Doc. 1, ¶ 13.) After she denied any illegal activity, Pierce informed Plaintiff that she was going to be strip searched. (Doc. 1, ¶ 14.) Plaintiff responded that she refused to be strip searched, and Pierce responded that Plaintiff did not have any choice. (Doc. 1, ¶ 15.) Plaintiff was then escorted to the women's restroom by King-Eddington and Nickell, where Plaintiff was required to remove her clothes and she was searched. (Doc. 1, ¶ 16.) Plaintiff was forced to bend over, squat, and cough as Defendants used flashlights aimed at Plaintiff's genitals. King-Eddington knew that Plaintiff was legally disabled and walked with the aid of a cane. (Doc. 1, ¶ 16.)

No contraband was found during the course of the strip search, and the Plaintiff was placed back in hand restraints and escorted to the visiting office by King-Eddington and Nickell. Pierce remained with Plaintiff. (Doc. 1, ¶ 17.) Pierce then grabbed Plaintiff by her inner upper arm, and his hand brushed up against Plaintiff's breast. Pierce escorted Plaintiff to a waiting patrol car outside and placed Plaintiff in the back seat. (Doc. 1, ¶ 18.) Pierce and Lucas sat in the front seat of the patrol car, and they proceeded to drive to Plaintiff's parked car. (Doc. 1, ¶ 20.) Pierce used Plaintiff's keys to open her car and search for contraband. (Doc. 1, ¶ 22.) Pierce then picked up Plaintiff's cell phone, turned it on, and looked through the contents on the phone, including text messages. (Doc. 1, ¶ 22.) Lucas asked Plaintiff if she wished to use the restroom before they left for the county facility, and

Plaintiff stated she did. (Doc. 1, ¶ 23.) Lucas escorted Plaintiff to the women's restroom and then escorted Plaintiff back to the patrol car where she was placed in the backseat. (Doc. 1, ¶ 23.)

Once placed back in the patrol car, Plaintiff was driven to the women's county facility where she was booked for a felony violation. (Doc. 1, ¶ 24.)

### III. Legal Standard

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter,* courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir.2011). In *Winter,* the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter,* 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high ... This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance,* 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff,

was expressly overruled by *Winter. See Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir.2009). The Ninth Circuit has since found that post-*Winter,* this circuit's sliding-scale approach, or "serious questions" test "survives ... when applied as part of the four-element *Winter* test." *Alliance,* 632 F.3d at 1131–32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee,* 740 F.2d 670, 675 (9th Cir.1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States,* 612 F.2d 1112, 1115 (9th Cir.1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California,* 220 F.3d 987, 998 (9th Cir.2000). "Section 3626(a) ... operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

1    The standard for issuing a temporary restraining order is identical to the standard for

2    preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d

3    832, 839 n. 7 (9th Cir.2001).

4                                           **IV. Discussion**

5    A. Standing

6            Under Article III, a federal court cannot consider the merits of a legal claim unless the person

7    seeking to invoke the jurisdiction of the court establishes the requisite standing to sue. *Whitmore v.*

8    *Arkansas,* 495 U.S. 149, 154 (1990) ("*Whitmore*"). A litigant demonstrates standing by showing that

9    (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or

10   imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of

11   the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed

12   by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167,

13   180-181 (2000); *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 103 (1998).

14           Plaintiff challenges the conditions of confinement of her husband, a state prisoner, and seeks

15   relief on his behalf.[2] The alleged seizure of Flemings' property does not amount to an injury to

16   Plaintiff. Although Plaintiff does not articulate her desire to proceed as a "next friend" to Flemings,

17   such may be her intention.

18           The Supreme Court recognized in *Whitmore* that a third party could file and pursue a claim

19   on behalf of a habeas petitioner[3] if she demonstrates standing as a "next friend." *Whitmore*, 495 U.S.

20   at 163. A next friend does not herself become a party to the habeas petition, "but simply pursues the

21   cause on behalf of the detained person, who remains the real party in interest." *Whitmore*, 495 U.S. at

22   163. The Court set out "at least two firmly rooted prerequisites to 'next friend' standing":

23           First, a next friend must provide an adequate explanation—such as inaccessibility,
24           mental incompetence, or other disability—why the real party in interest cannot appear
             on his own behalf to prosecute the action. Second, the next friend must be truly

25

26   ───────────────
     [2] Such an action is appropriately brought by the prisoner pursuant to 42 U.S.C. § 1983, not an application for
     preliminary injunction brought by a family member.
27   [3] "Next Friend" standing is generally seen in context of prisoner who is unable, because of mental incompetence, to
     seek relief. However, district courts have considered its application to petitions challenging conditions of
28   confinement if inaccessibility can be proven. *See e.g. Jones v. Corzine*, 2010 WL 1948352, *14 (D. N.J. 2010).

> dedicated to the best interests of the person on whose behalf he seeks to litigate and it has been further suggested that a next friend must have some significant relationship with the real party in interest. The burden is on the next friend clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.

*Whitmore*, 495 U.S. at 163–64 (citations omitted). A habeas petition must set forth some reason or explanation for the need to resort to the use of a "next friend." *See Weber v. Garza,* 570 F.2d 511, 513-14 (5th Cir.1978). It is clear that a "next friend" may not file a petition for a writ of habeas corpus on behalf of a detainee if the detainee himself could file the petition. *Wilson v. Lane,* 870 F.2d 1250, 1253 (7th Cir.1989), *cert. denied,* 495 U.S. 923 (1990). Plaintiff alleges that Flemings' mail has been intercepted by prison officials. This could be Plaintiff's attempt at alleging inaccessibility. However, Flemings was able to complete a declaration and provide it to Plaintiff for submission with this application for preliminary injunction. Further, Flemings' prison mail log indicates that he has been able to send and receive documentation with the Court. Accordingly, this Court cannot recognize Plaintiff as a "next friend" to Flemings since his inaccessibility has not been adequately demonstrated.

Plaintiff also alleges that Defendants have attempted to dissuade a witness in violation of 18 U.S.C. §§ 1512(b)(1-2) by using intimidation, threats, or corrupt persuasion to attempt to influence delay, or prevent the testimony of Flemings in this action. Statutes found under Title 18 of the United States Code, Crimes and Criminal Procedure, may only be brought by the state and not by individuals. *Williams v. Rodriguez*, 2012 WL 2339742, *4 (2012) *adopted by* 2012 WL 4026179 (E.D. Cal. 2012); *See Robinson v. Cunan*, 489 Fed.Appx. 187 (9th Cir. 2012) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1979) (A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.). Private plaintiffs do not have standing to sue pursuant to criminal statutes.[4] Accordingly, Plaintiff does not have standing to sue pursuant to 18 U.S.C. 1512.

---

[4] The exceptions to this general rule are not applicable here.

7

B. Exhaustion

Even if Plaintiff had standing to bring an action pursuant to 42 U.S.C. § 1983 on Flemings' behalf, which she does not, the prisoner must first have exhausted his administrative remedies as to each claim. The Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under this section, an action must be dismissed unless the prisoner exhausted his available administrative remedies *before* he filed suit, even if the prisoner fully exhausts while the suit is pending. *See McKinney v. Carey,* 311 F.3d 1198, 1199 (9th Cir.2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." *Id.* at 524; *Booth v. Churner,* 532 U.S. 731, 739–40 & n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.* at 741. The purposes of the exhaustion requirement include allowing the prison to take responsive action, filtering out frivolous cases and creating an administrative record. *See Porter,* 534 U.S. at 525.

A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies. *Wyatt v. Terhune,* 315 F.3d 1108, 1120 (9th Cir.), *cert. denied,* 540 U.S. 810 (2003). Accordingly, a claim may be dismissed without prejudice if it is clear from the record that the prisoner has conceded that he did not exhaust administrative remedies. *Id.*

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." *See* Cal.Code Regs. tit. 15, § 3084.1(a). It also

provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. *See id.* § 3084.5; *Barry v. Ratelle,* 985 F.Supp. 1235, 1237 (S.D.Cal.1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). *See id.* at 1237–38.

Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The California administrative appeal process provides that an inmate has the right to file an appeal once every 14 calendar days unless the appeal is accepted as an emergency appeal. Cal.Code Regs. tit. 15, § 3084.1(f). Exhibit D to Plaintiff's application for preliminary injunction indicates that on April 22, 2014, Flemings' inmate appeal seeking the return of his television was rejected based on his having filed more than the allowable number of appeals. (Doc. 18 at 23-25.) The prisoner further indicated that he was still engaged in addressing his unresolved inmate complaints on the date of the mailing of this application for preliminary injunction. (Doc. 18 at 11.) Based on the documentation submitted in support of the application for preliminary injunction, it is clear that the prisoner has not completed the first formal level of inmate appeal, much less all three formal levels. Accordingly, the failure to comply with PLRA exhaustion requirements, apparent from the face of the record, warrants denial of this requires for preliminary relief.

C. Filing of documents unrelated to the present action

This Court indicated in its January 16, 2014 order that this action is to proceed only based on the unlawful arrest and unreasonable search causes of action. All of the claims alleged in the instant application for preliminary injunction are well afield of the remaining issues in this suit.

Further, it appears that Plaintiff is not and has not been personally involved in this litigation. All of the documentation submitted to this Court, bearing Ms. O'Con's name, appears to have been generated and signed by Flemings. Mr. Flemings is reminded that he is not licensed to practice law nor is does airing his inmate grievances in his wife's name prior to exhaustion of his administrative remedies make it any more likely that he will receive the requested relief. If, in any upcoming responses required of Plaintiff, it continues to appear to this Court that Ms. O'Con does not have an active hand in this litigation the Court will issue an order to show cause requiring Plaintiff to show cause why this action should not be dismissed for failure to prosecute. Similarly, if Plaintiff continues to make filings beyond the restricted scope of this action or further frivolous filings this Court will issue an order to show cause why sanctions, up to and including dismissal, should not be imposed. *See* 28 U.S.C. §§ 1915(e)(2)(i-ii) (the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious or fails to state a claim.)

D. Preliminary injunction

Based on the foregoing, this Court has determined that Plaintiff has not established that it is likely that she will succeed on the merits nor that *she* is likely to suffer irreparable harm (or any injury) in the absence of preliminary relief. Plaintiff's failure to establish the first two requisite showings for a preliminary injunction is dispositive. *Winter*, 555 U.S. at 21; *Peviani v. Natural Balance, Inc.*, 2012 WL 441098, *2 (E.D. Cal. 2012); *Kane v. Chobani, Inc*. 2013 WL 3776172 (N.D. Cal. 2013). Accordingly, this Court declines to make a determination as to the remaining requirements for a preliminary injunction.

///
///
///

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's application for preliminary injunction is DENIED;

2.  All of the claims for relief articulated in Plaintiff's application for preliminary injunction are DENIED;

3.  Plaintiff is not to make further filings in this action that exceed the permissible scope of the remaining claims as outlined by this Court's January 16, 2014 order. (Doc. 10.)

IT IS SO ORDERED.

Dated:   May 7, 2014                          _____

                                              SENIOR  DISTRICT  JUDGE